UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JAMES ELTON ROBERTS,

        Plaintiff,

v.                                 Case No. 3:22-cv-575-MMH-SJH

FLORIDA DEPARTMENT OF
CORRECTIONS and M. MILLER,

        Defendants.

_____

## **ORDER**

### **I. Status**

Plaintiff James Elton Roberts, an inmate in the custody of the Florida Department of Corrections (FDC), initiated this action on May 25, 2022, by filing a pro se Complaint for Violation of Civil Rights (Complaint; Doc. 1) pursuant to 42 U.S.C. § 1983. Roberts proceeds on an Amended Complaint (AC; Doc. 10). He names the FDC and Chaplain M. Miller as Defendants. See id. at 1.[1] In the AC, Roberts alleges Defendants violated his rights under the First Amendment and the Religious Land Use and Institutionalized Persons Act (RLUIPA) when they denied him participation in the Religious Diet Program

---

[1] For all pleadings and documents filed in this case, the Court cites to the document and page numbers as assigned by the Court's Electronic Case Filing System.

(RDP) for kosher meals. See id. at 1–3. As relief, Roberts requests court costs and "to be placed on the [RDP] kosher meal." Id. at 3.

This matter is before the Court on Defendants' Motion for Summary Judgment (Motion; Doc. 47) with exhibits (Docs. 47-1 through 47-30). The Court advised Roberts of the provisions of Rule 56, Federal Rules of Civil Procedure (Rule(s)), notified him that the granting of a motion for summary judgment would represent a final adjudication of this case which may foreclose subsequent litigation on the matter, and permitted him an opportunity to respond to the Motion. See Order (Doc. 11); Summary Judgment Notice (Doc. 48). Roberts filed a response in opposition to the Motion (Response; Doc. 49). Defendants' Motion is ripe for review.

## II. Roberts's Allegations

Roberts asserts that Defendants denied him "the ability to have the [RDP] kosher meal that's in adherence with the dietary structures of [his] faith and religious belief which is Jewish as [his] religious preference of note." AC at 2. He alleges that he received a "Notice of Violation for the [RDP] kosher meal" on July 15, 2021. Id. According to Roberts, although he responded to the notice, he subsequently received another "violation form" stating that he failed to submit a response. Id. Roberts complains that the FDC withdrew him from

2

the RDP and advised him that he could reapply on January 23, 2022. <u>Id.</u> He reapplied to the RDP on that date. <u>Id.</u> Roberts contends that, on January 27, 2022, he received a response that "approval [was] in process allow 10 days." <u>Id.</u> However, Defendant Miller, the "overseer" of the RDP, then denied Roberts' application because he did not "describe [the] diet that was part of [his] religious obligation such as permitted or restricted foods, prep[a]ration methods, etc., and [was] unable to articulate an understanding of the kosher process. . . . ." <u>Id.</u> Roberts maintains he properly described the kosher process. <u>Id.</u> at 3. He asserts Defendants FDC and Miller have denied him kosher meals in violation of the First Amendment and RLUIPA. <u>Id.</u> at 1-2. As relief, Roberts requests "to be placed on the [RDP] kosher meal . . . and all court costs to be paid by the [D]efendants including filing fees and whatever other costs that result from this case." <u>Id.</u> at 3.

### III. Summary Judgment Standard

Under Rule 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The record to be considered on a motion for summary judgment may include "depositions, documents, electronically stored information, affidavits or declarations,

stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).[2] An issue is genuine when the evidence is such that a reasonable jury could return a verdict in favor of the non-moving party. <u>Mize v. Jefferson City Bd. of Educ.</u>, 93 F.3d 739, 742 (11th Cir. 1996) (quoting <u>Hairston v. Gainesville Sun Publ'g Co.</u>, 9 F.3d 913, 919 (11th Cir. 1993)). "[A] mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for summary judgment." <u>Kesinger ex rel. Estate of Kesinger v.</u>

---

[2] Rule 56 was revised in 2010 "to improve the procedures for presenting and deciding summary-judgment motions." Rule 56 advisory committee's note 2010 Amends.

> The standard for granting summary judgment remains unchanged. The language of subdivision (a) continues to require that there be no genuine dispute as to any material fact and that the movant be entitled to judgment as a matter of law. The amendments will not affect continuing development of the decisional law construing and applying these phrases.

<u>Id.</u> "[A]lthough the interpretations in the advisory committee['s] notes are not binding, they are highly persuasive." <u>Campbell v. Shinseki</u>, 546 F. App'x 874, 879 n.3 (11th Cir. 2013). Thus, case law construing the former Rule 56 standard of review remains viable.

In citing to <u>Campbell</u>, the Court notes that it does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. <u>See</u> <u>McNamara v. GEICO</u>, 30 F.4th 1055, 1060–61 (11th Cir. 2022); <u>see generally</u> Fed. R. App. P. 32.1; 11th Cir. R. 36–2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

Herrington, 381 F.3d 1243, 1247 (11th Cir. 2004) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

The party seeking summary judgment bears the initial burden of demonstrating to the court, by reference to the record, that there are no genuine issues of material fact to be determined at trial. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). "When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593–94 (11th Cir. 1995) (internal citations and quotation marks omitted). Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. In determining whether summary judgment is appropriate, a court "must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." Haves v. City of Miami, 52 F.3d 918, 921 (11th Cir. 1995) (citing Dibrell Bros. Int'l, S.A. v. Banca Nazionale Del Lavoro, 38 F.3d 1571, 1578 (11th Cir. 1994)). "Summary judgment is improper, however, if the

evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Guevara v. NCL (Bahamas) Ltd.</u>, 920 F.3d 710, 720 (11th Cir. 2019) (quotation marks and citation omitted).

## IV. Summary of the Arguments

### A. Defendants' Position

Defendants argue the following: (1) Defendant Miller is immune from suit and redundant to Defendant FDC; (2) Roberts's claims are due to be dismissed because "he does not come to this Court with clean hands"; (3) Roberts's RLUIPA and First Amendment claims fail on the merits; and (4) Roberts's request for injunctive relief is "neither necessary nor narrowly tailored." <u>See</u> Motion at 8–24. In support of their arguments, Defendants submit the Declaration of Ernest Wynn, Senior Chaplain at Florida State Prison, who describes the RDP and its associated rules as follows:

> The RDP is a diet program that is designed to accommodate the adherents of particular religions, such as Islam or Judaism, with a diet that is within the confines of their food restrictions set out within their religion. Meals in this program are prepared in a manner that prevents cross-contamination with foods that are restricted by the adherent's religion and are provided to the inmate in a paper bag rather than a regular food tray. The food and drink containers and materials must be returned to prison staff for disposal and keeping them is considered contraband and a

violation of the RDP guidelines that the inmate agrees to when enrolling in the program.

To be enrolled in the RDP, an inmate must articulate several things to demonstrate their knowledge of their religion and specifically [sic] knowledge about dietary restrictions. The questions on the RDP application include a description of their religion and their practices, what the inmate's religious diet needs are, whether there is a less restrictive diet option that fulfills their dietary needs under this religion, and a description of what Kosher means. The application includes advisement that possessing, purchasing, or consuming food not consistent with the RDP will be seen as a violation of their dietary requirements. The inmate will answer the questions, sign the application, acknowledging the advisements, and submit the application. Once received by the Chaplaincy, the application is reviewed, and a determination is made whether or not to approve the inmate for the RDP. This will sometimes include a face-to-face meeting with the inmate if additional information or clarification is needed to supplement the application. If an inmate is not approved, Chaplaincy must fill out a section indicating the reason for disapproval.

One of the reasons that an Inmate can be denied enrollment in the RDP is an inability to articulate what the Kosher processes and separations are or why they are needed for them to adequately adhere to the tenets of their religion. The Kosher process describes how food under Judaism needs to be prepared. The Kosher separations define how and which foods need to be separated to be legal under Judaism.

Failing to adequately answer or articulate the knowledge related to an inmate's religion and dietary

requirements can indicate, but doesn't necessarily prove, a lack of sincerity

If an inmate violates the RDP, they will be provided with notice and given five days to respond. If an inmate fails to respond to a notice of violation within this timeframe, it is considered a voluntary withdrawal from the program. Upon receipt of the notice response, Chaplaincy will review the response and determine if a suspension or removal from the program is necessary. Sometimes only counseling is necessary. However, if there was a clear, willful violation, or repeat violation suspension is the appropriate response. For the first violation an inmate is suspended for thirty (30) days, for the second violation, one-hundred twenty (120) days, and for each violation following the second, a suspension for one year. Following the conclusion of their suspension, if the inmate wants to be reinstated in the RDP, he must submit an inmate request within ten (10) days of the suspension's conclusion. If an inmate has been voluntarily withdrawn from the program, he must wait one-hundred eighty (180) days before submitting an inmate request requesting enrollment in the program. If an inmate is not approved for the program, he must wait one-hundred eighty (180) days before submitting a new inmate request requesting enrollment in the program.

Doc. 47-2 at 2–4 (enumeration omitted).

The record reflects that on February 11, 2021, Roberts received a Notice of Violation, which identified his religion of record as Judaism, stating he had consumed non-kosher items. See Doc. 47-1 at 2. Roberts was suspended from the RDP for thirty days. See id.; see also Doc. 47-4 at 2. Roberts applied for

8

reinstatement within ten days of the suspension's conclusion; he was reenrolled on March 21, 2021. <u>See</u> Docs. 47-5 at 2, 47-6 at 2.

On July 15, 2021, Roberts received a second Notice of Violation, stating he had applied for and received vegan meals on the RDP. <u>See</u> Doc. 47-7 at 2–3. The second Notice of Violation advised Roberts that if he was "interested in continuing [his] participation in the RDP [he] must complete this form and return it to the Chaplain within five days of the 'Notice Date.'" <u>Id.</u> Roberts failed to respond within five days; therefore, Defendant Miller removed him from the RDP and advised Roberts that he could reapply for the RDP in 180 days. <u>See</u> Doc. 47-9 at 2.

On January 19, 2022, Roberts submitted an Inmate Request, asking that he be placed on "the list for Ramadan and find out what day it begins and ends," as well as on the RDP. Doc. 47-12 at 2. Chaplain C. Bailey denied the Inmate Request, advising Roberts that his current religious affiliation is listed as Jewish, "which is not consistent with Muslim Ramadan." <u>Id.</u> Chaplain Bailey further advised Roberts that he was approved "'Certified for Kosher' (CFK) which is the one week Kosher meal during Passover," and that "[r]ecord shows [Roberts] requested to be withdrawn from RDP." <u>Id.</u> On January 25, 2022, Roberts submitted a second Inmate Request, about the RDP, and

Defendant Miller responded to allow 10 days for processing. <u>See</u> Doc. 47-13 at 2. On that same day, Roberts reapplied to the RDP, indicating his request for kosher meals per his Jewish religion. <u>See</u> Doc. 47-14 at 2. However, Defendant Miller denied Roberts's application because he failed to articulate that he must remain Kosher as part of his religion and describe the Kosher process and separations. <u>See</u> <u>id.</u> at 3. Per the RDP rules, Roberts could reapply in July 2022. <u>See</u> Doc. 47-2 at 4.

On July 27, 2022, Roberts applied for the RDP; Defendant Miller approved his application. <u>See</u> Doc. 47-19 at 2–3. Roberts remained on the RDP until March 2, 2023, when he received a third Notice of Violation for consuming non-kosher food. <u>See</u> Doc. 47-20 at 2–3. The third Notice of Violation identified his religion of record as Muslim. <u>See</u> <u>id.</u> at 2.

Defendant Miller reinstated Roberts on the RDP on July 17, 2023.[3] <u>See</u> Doc. 47-21 at 2. On August 9, 2023, Roberts received a fourth Notice of Violation, which identified his religion of record as the Nation of Islam, for consuming a non-kosher drink. <u>See</u> Doc. 47-22 at 2–3. Defendant Miller counseled but did not suspend Roberts. <u>See</u> <u>id.</u> at 2.

---

[3] Defendant Miller's response to the Inmate Request identifies the date of reinstatement as April 17, 2023, which appears to be a scrivener's error.

10

On September 9, 2023, Roberts received his fifth Notice of Violation, which identified his religion of record as Judaism, for hoarding RDP items. <u>See</u> Doc. 47-23 at 2–5. According to a Disciplinary Report, Roberts hoarded a food tray and several Styrofoam cups. <u>See</u> <u>id.</u> at 3, 5. Roberts failed to respond to the Notice, so Defendant Miller withdrew him from the RDP. <u>See</u> <u>id.</u> at 2; <u>see also</u> Doc. 47-24 at 2. On March 18, 2024, Roberts reapplied for the RDP. <u>See</u> Doc. 47-25 at 2–3. Based on his application, Chaplain Bailey met with Roberts and denied his application because he did not articulate an understanding of kosher processes and separations. <u>See</u> <u>id.</u> at 3; <u>see also</u> Doc. 47-26 at 2. On September 20, 2024, Roberts reapplied for the RDP. <u>See</u> Doc. 47-27 at 2–3. Again, Chaplain Bailey denied Roberts's application because he failed to articulate an understanding of kosher processes and separations. <u>See</u> <u>id.</u> at 3; <u>see also</u> Doc. 47-28 at 2.

## B. Roberts's Position

Roberts argues that he has "more than shown [an] adequate understanding of the kosher meal as can be viewed by [his] numerous exhibits given to this [C]ourt." Response at 1. According to Roberts, Defendants "just don't want to pay for the meal." <u>Id.</u> Roberts asserts that he must "be supplied with a meal to his religious standards if ther[e] is one which is the CFO/PDP

11

kosher meal." Id.  In accordance with his religious beliefs, he is "not supposed to eat blood of animals or eat or even touch certain foods which is why [he] can't eat off normal food line . . . and it's necessary food must come in packages from certified vendors and utensils have to be one time use or specifically for kosher RDP/CFO meals." Id.

## V. Law and Conclusions

### A. RLUIPA

Defendants argue, in part, that Roberts's claims under RLUIPA must fail because the evidence demonstrates as a matter of law that Roberts is not sincere in his belief that a kosher diet is important to the free exercise of his religion. See Motion at 15–18.

RLUIPA provides the following: "No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . unless the government demonstrates that imposition of the burden . . . (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a). "To establish a prima facie case under RLUIPA, the plaintiff must demonstrate that his engagement in religious

exercise was substantially burdened by the law, regulation, or practice he challenges." <u>Smith v. Owens</u>, 848 F.3d 975, 979 (11th Cir. 2017).

> Although RLUIPA bars inquiry into whether a particular belief or practice is "central" to a prisoner's religion, <u>see</u> 42 U.S.C. § 2000cc-5(7)(A), the Act does not preclude inquiry into the sincerity of a prisoner's professed religiosity. <u>Cf.</u> <u>Gillette v. United States</u>, 401 U.S. 437, 457, 91 S.Ct. 828, 28 L.Ed.2d 168 (1971) ("'[T]he "truth" of a belief is not open to question'; rather, the question is whether the objector's beliefs are 'truly held.'" (quoting <u>United States v. Seeger</u>, 380 U.S. 163, 185, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965))).

<u>Cutter v. Wilkinson</u>, 544 U.S. 709, 725 n.13 (2005); <u>see also, e.g.</u>, <u>Holt v. Hobbs</u>, 574 U.S. 352, 360–61 (2015) ("RLUIPA protects 'any exercise of religion, whether or not compelled by, or central to, a system of religious belief,' but, of course, a prisoner's request for an accommodation must be sincerely based on a religious belief and not some other motivation." (internal citations omitted)).

In support of Defendants' Motion, they submit numerous Notices of Violation, which reflect that Roberts violated the rules of the RDP by consuming non-kosher (vegan) meals. In his Declaration, Chaplain Wynn states:

> Inmate Roberts, DC#132873, who is a registered adherent of Judaism within FDC, has been suspended or voluntarily withdrawn from RDP a total of four times for the following reasons: three times for consuming food that was not RDP approved, and one

13

time for hoarding RDP materials. Inmate Roberts also received one occurrence of counseling following a violation that did not result in a suspension.

Doc. 47-2 at 4. Chaplain Wynn also confirms that the vegan meals violate the RDP guidelines because "the food in these meals is not Kosher." Id.

Additionally, Defendants note that after Chaplain Miller removed Roberts from the RDP in July 2021, Roberts submitted an Inmate Request, asking that he be placed on "the list for Ramadan" Doc. 47-12 at 2. Roberts's third and fourth Notices of Violation identify his religion of record as Muslim and Nation of Islam.[4] Notably, Roberts does not address the sincerity of his belief in his AC or Response. Indeed, he points to no evidence, let alone a sworn affidavit, that contradicts Defendants' evidence.

The Court finds that Defendants have met their initial burden of showing, by reference to the sworn Affidavit of Chaplain Wynn, Notices of Violation, and July 2021 Inmate Request, that there are no genuine issues of material fact that should be decided at trial. Defendants have presented evidence that Roberts has violated the RDP guidelines on numerous occasions

---

[4] Given Roberts's prior request to be placed on the list for Ramadan, his third and fourth Notices of Violation do not appear to erroneously identify his religion of record. Regardless, evidence of Roberts's repeated RDP violations and his July 2021 Inmate Request by themselves constitute sufficient evidence that Roberts does not sincerely believe a kosher diet is important to the free exercise of his religion.

when he has applied for and eaten non-kosher (vegan) meals. Moreover, when removed from the RDP, he has requested to be placed on the list for Ramadan, a Muslim holiday. Roberts has not provided the Court with any contrary evidence, other than the unsworn statements in his AC and Response, which do not directly refute such evidence. Thus, the unrebutted evidence demonstrates that Roberts has consumed non-kosher food and requested an accommodation for his observance of a non-Jewish holiday. Given such evidence, the Court concludes as a matter of law that Roberts cannot show that he sincerely believes that a kosher diet is important to the free exercise of his religion. Therefore, he has failed to establish a prima facie claim under RLUIPA, and Defendants' Motion is due to be granted on this basis.

## B. First Amendment

Roberts also alleges Defendants violated his First Amendment right to freely exercise his religion when they removed him from the RDP. See AC at 1. "To plead a valid free exercise claim, [Roberts] must allege that the government has impermissibly burdened one of his 'sincerely held religious beliefs.'" Watts v. Florida Intern. Univ., 495 F.3d 1289, 1294 (11th Cir. 2007) (quoting Frazee v. Ill. Dep't of Emp. Sec., 489 U.S. 829, 834 (1989)). "A [prison] should accommodate an inmate's religious dietary restrictions, subject to

15

budgetary and logistical limitations, but only when the belief is 'truly held.'" Hathcock v. Cohen, 287 F. App'x 793, 801 (11th Cir. 2008) (per curiam) (quoting Martinelli v. Dugger, 817 F.2d 1499, 1504–06, 1508 (11th Cir. 1987)).

Defendants move for summary judgment on Roberts's First Amendment claim. See Motion at 20–22. And although they argue a lack of sincerity as to Roberts's RLUIPA claim, they do not make such an argument as to his First Amendment claim. Nevertheless, the Court invokes its authority under Rule 56(f)(2) to "grant the motion on grounds not raised by a party." Generally, a court must provide notice and an opportunity to be heard in such cases. However, failure to give notice can be harmless if a party is not deprived of the opportunity to present all facts or arguments that would have precluded summary judgment. See Restigouche, Inc. v. Town of Jupiter, 59 F.3d 1208, 1213 (11th Cir. 1995) ("Because [the plaintiff] has not been deprived of the opportunity to present facts or arguments which would have precluded summary judgment in this case, any violation of the . . . notice rule is harmless."). Here, in response to Defendants' argument with respect to his RLUIPA claim, Roberts had ample opportunity to present arguments and evidence concerning the sincerity of his religious beliefs. Therefore, based on the undisputed evidence, the Court determines Roberts has failed to establish

16

a prima facie claim under the First Amendment, and summary judgment will be entered in favor of Defendants on this claim.[5] See Gardner v. Riska, 444 F. App'x 353, 354–55 (11th Cir. 2011) (per curiam) (affirming grant of summary judgment to defendants where plaintiff failed to establish a prima face case under RLUIPA, and thus the First Amendment, because he "failed to demonstrate that he sincerely believes that a Kosher diet is important to the free exercise of his religion").

Therefore, it is now **ORDERED:**

1.    Defendants Florida Department of Corrections and Chaplain M. Miller's Motion for Summary Judgment (Doc. 47) is **GRANTED**.

2.    The **Clerk** shall enter judgment in favor of Defendants and against Roberts, terminate any pending motions, and close the case.

**DONE AND ORDERED** at Jacksonville, Florida, this 2nd day of June, 2025.



MARCIA MORALES HOWARD
United States District Judge

---

[5] Because summary judgment is appropriate based on the sincerity of Roberts's religious beliefs, the Court need not address Defendants' remaining arguments in the Motion.

17

Jax-9 5/27
c:      James Elton Roberts #132873
        Counsel of record

18